UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AIR TRANSPORT ASSOCIATION
OF AMERICA, INC.,

                        Plaintiff,

   -against-                                       1:07-CV-1103
                                                          (LEK/DRH)
ANDREW CUOMO, in his official capacity
as Attorney General of the State of New
York, and MINDY A. BOCKSTEIN, in her
official capacity as Chairperson and
Executive Director of the New York
State Consumer Protection Board,

                        Defendants.
_____

**Memorandum-Decision and Order[1]**

**I.  Background**

The New York State Assembly recently enacted a series of statutes which impose requirements on airlines operating in New York State.  The statutes, codified at Section 553(2)(d) of New York's Executive Law and Sections 251-f through 251-j of Article 14A of New York's General Business law, collectively define a "bill of rights" for airline passengers.  N.Y. EXEC. LAW § 553(2)(d) (McKinney 2007); N.Y. GEN. BUS. LAW § 251-f-j (McKinney 2007).  The statutes (hereinafter referred to collectively as the "Passenger Bill of Rights") are to go into effect January 1, 2008 and concern on-board services which must be provided to passengers if delays result in more than three hours on board an airplane prior to takeoff.  N.Y. GEN. BUS. LAW § 251-g.  The substantive provisions of the Passenger Bill of Rights state:

---

[1] For printed publication by the Federal Reporters.

> 1. Whenever airline passengers have boarded an aircraft and are delayed more than three hours on the aircraft prior to takeoff, the carrier shall ensure that passengers are provided as needed with:
>
>> (a) electric generation service to provide temporary power for fresh air and lights;
>> (b) waste removal service in order to service the holding tanks for on-board restrooms; and
>> (c) adequate food and drinking water and other refreshments.
>
> 2. All carriers shall provide clear and conspicuous notice on consumer complaint contact information by providing forms and/or causing signs to be posted at all service desks and other appropriate areas as necessary in their respective areas in an airport which shall contain information in such form and manner as the airline consumer advocate shall prescribe, including, but not limited to, the following:
>
>> (a) a telephone number and mailing address of the office of the airline consumer advocate, the aviation consumer protection division, and the office of aviation enforcement of the United States department of transportation;
>> (b) explanations of the rights of airline passengers; and
>> (c) basic information on the office of the airline consumer advocate.

N.Y. GEN. BUS. LAW § 251-g. The statute authorizes the Attorney General to seek civil penalties of up to 1000 dollars per violation. N.Y. GEN. BUS. § 251-f.

Plaintiff contends that the Passenger Bill of Rights is preempted by the Airline Deregulation Act of 1978 ("ADA"), codified at 49 U.S.C. §41713(b)(1). According to that argument, only the federal government can regulate commercial airlines and any regulation passed by New York State must be struck down. To that end, Plaintiff seeks summary judgment, or failing that, a preliminary injunction preventing implementation of the Passenger Bill of Rights until its validity can be determined.

## II. Summary Judgment Analysis

### A.   Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). In

evaluating the propriety of summary judgment, "[w]e must construe all the evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir.2005).

 B. Analysis

  1. Genuine Issue of Material Fact

The dispute in this case is entirely legal: whether New York's Passenger Bill of Rights is preempted by the ADA. Further factual development would shed no light on this issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-9 (1986). Accordingly, there is no material factual dispute requiring further development and the case is ripe for summary judgment.

  2. Entitlement to Judgment as a Matter of Law

The resolution of this case hinges on the breadth of federal preemption of state law relating to airline services. A proper preemption analysis must examine whether the federal legislation is in an area of traditional state authority, whether Congress has explicitly or implicitly preempted such state laws, and whether the state law frustrates the purpose of the federal legislation. Additionally, "In possible preemption areas where common federal and state interests exist, courts should seek, if possible, some reasonable and uniform accommodation which does not frustrate either the full congressional purposes and objectives or state policies in determining the relationship between federal and state laws." Abdu-Brisson v. Delta Airlines, Inc., 128 F.3d 77, 86 (2d Cir. 1997).

   a. Deference to State Police Powers

In evaluating if a state law is preempted by federal legislation, a court must consider whether the area of legislation is within the state's historic police powers. "[I]n all preemption cases, and particularly in those in which Congress has legislated ... in a field which the States have traditionally

occupied, ... [the court must] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) (internal citations and quotations omitted). See also Abdu-Brisson, 128 F.3d at 83 (" Because the challenged state law concern[s] health and safety, an area traditionally regulated by the states pursuant to their police powers,... the party arguing in favor of preemption '[bears] a considerable burden of overcoming 'the starting presumption that Congress did not intend to supplant state law.'") (quoting De Buono v. NYSA-ILA Med. and Clinical Serv. Fund, 520 U.S. 806, 814 (1997) (further quotations omitted)).

The field of health and safety is one of the most established areas of state police power. See Buckman Co. v. Plaintiff's Legal Comm., 531 U.S. 341, 347 (2001) (noting "the historic primacy of state regulation of matters of health and safety" (quoting Medtronic, 518 U.S. at 485)); Metro. Life Inc. Co. v. Mass., 471 U.S. 724, 756 (1985) ("[s]tates traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons.") (internal citations omitted); Envtl. Encapsulating Corp. v. City of New York, 855 F.2d 48, 53 (2d Cir. 1988) ("there is a 'presumption that state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause'" (internal citations omitted)). Like regulations governing blood collection, See Hillsborough County, Fla. v. Automated Med. Lab., Inc. 471 U.S. 707, 715 (1985), or the protection of groundwater, See Oxygenated Fuels Ass'n, Inc. v. Pataki, 293 F. Supp.2d 170, 174 (N.D.N.Y. 2003) (Mordue, J.), the Passenger Bill of Rights is an exercise in state protection of the public health. Fresh air, water, sanitation and food are necessities in the extreme situation in which this act applies. It threatens the public health to contain people on grounded airplanes for hours without these necessities, particularly, though not exclusively, if

4

passengers include diabetics, young children, the sick or the frail.

Because the Passenger Bill of Rights involves the historic police power of New York State, Plaintiff bears a heavy burden in seeking to overcome the presumption against preemption.

### b. Background of the ADA

In determining whether Congress intended state laws such as the Passenger Bill of Rights to be preempted, it is necessary to examine the purpose of the ADA. The ADA was created "to encourage, develop, and attain an air transportation system which relied on competitive market forces to determine the quality, variety, and price of air services, and for other purposes." S. 2493, 95th Cong., Pub. L. 95-504 (Oct. 24, 1978) The United States Supreme Court recognized that the ADA was "designed to promote 'maximum reliance on competitive market forces.'" Am. Airlines v. Wolens, 513 U.S. 219, 230 (1995) (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992)). See also Alshrafi v. Am. Airlines, Inc., 321 F.Supp.2d 150, 159 (D. Mass. 2004) (noting that "[t]o achieve this economic deregulation, Congress intended 'to insulate the industry from possible state economic regulation'" (quoting Charas v. Trans World Airlines, 160 F.3d 1259, 1266 (9th Cir. 1998))); Hodges v. Delta Airlines, Inc., 44 F.3d 334, 337 (5th Cir. 1995) (noting that the statements made by the Civil Aeronautics Board, which bore responsibility for implementing the ADA, "strongly support the view that the ASA was concerned solely with economic deregulation," as opposed to displacing state tort law). The legislative record of the bill demonstrates that the purpose of the ADA was to foster "a regulatory and economic environment which will encourage the realistic threat of competition, facilitate entry into markets by qualified firms and develop market incentives to lower costs and better efficiency by existing and new carriers." H. R. CONF. REP. 95-1779 at 55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3773, 3774.

        c.       Explicit Preemption by the ADA

The text of the ADA notes that states "may not enact or enforce a law, regulation, or other provision.…related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). Plaintiff argues that the Passenger Bill of Rights "specifically and directly regulates the services provided by air carriers" and is thus preempted. Pl's Mem. (Dkt. No.7) at 2.

The United States Courts of Appeals "have taken directly conflicting positions" on the statutory interpretation of "services" within the context of the ADA. Northwest Airlines, Inc. v Duncan, 531 U.S. 1058 (2000) (O'Connor, J., dissenting from denial of certiorari). The Ninth and Third Circuits have adopted very narrow definitions of service, holding "that the term 'service' encompasses 'the prices scheduled, origins and destinations of the point-to-point transportation of passengers, cargo, or mail' but not the 'provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities.'" Id. (quoting Duncan v. Northwest Airlines, Inc., 208 F.3d 1112, 1114-1115 (9th Cir. 2000)); Charas, 160 F.3d at 1265-1266 ("[t]o interpret "service" more broadly would result in the preemption of virtually everything an airline does. It seems clear to us that that is not what Congress intended"); citing Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 194 (3d Cir. 1998)). In contrast, the Fifth, Seventh and Eleventh Circuits have adopted a much broader definition of "services." In Hodges v. Delta Airlines, the Fifth Circuit, writing *en banc*, defined "services" to include "the economic or contractual features of air transportation." 44 F.3d at 338. See also Branche v. Airtran Airways, Inc., 342 F.3d 1248 (11th Cir. 2003) (adopting the Hodges definition of services); accord. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1433 (7th Cir. 1996). The Second Circuit has not yet ruled on this issue. See Pittman v. Grayson, 869 F. Supp. 1065, 1072 (S.D.N.Y. 1994); Trinidad v.

6

Am. Airlines, Inc., 932 F. Supp. 521, 525 (S.D.N.Y. 1996).

However, while the definition of services is unresolved, this controversy does not directly implicate the matter presently before the Court.  The provision of fresh air, water, food and bathroom access to passengers who have spent three hours confined on the runway is not within either definition of "services."  Even the expansive definition of services used by the Fifth, Seventh and Eleventh Circuits is limited to "contractual arrangements between the airline and the user of the service," also described as "elements of the air carrier service bargain."  Hodges, 44 F.3d at 336 (internal quotations omitted).  As noted above, the provision of fresh air, water, food and lavatory access to passengers trapped for hours on a motionless plane is a health and safety issue.  These provisions, the subject of the Passenger Bill of Rights, are distinct from the "quid pro quo for [a] passenger's fare."  Id. at 337, n.5 (quoting 44 Fed. Reg. 9948, 9951 (Feb. 15, 1979)).  Much as passengers do not specifically contract for the right to be free of tortious behavior, they do not contract for access to bathrooms, air and water: the provision of these necessities is presumed.

A closer look at Congress' intent in passing the ADA supports the conclusion that the "services" which cannot be regulated by states do not encompass the provisions of the Passenger Bill of Rights.  See Hodges, 44 F.3d at 335-336 ("[i]nterpretation of the statutory language is the key to construing its preemptive force.").  As described above, the policy goal of the ADA was to increase competition, so as to lower costs and increase efficiency in the airline industry.  H.R. Conf. Rep. 95-1779, at 56.  Therefore, states are forbidden from regulating consumer choice issues, which might affect the airline industry's responsiveness to the market and, thus, frustrate the purpose of the ADA.  However, the provisions of the Passenger Bill of Rights are not consumer choice issues; they are consumer health and safety issues.  As consumer health issues, the provisions of the Passenger

7

Bill of Rights are outside the scope of the ADA, irrelevant to the purpose of the ADA, and beyond its preemptive reach.

### d. Implicit Preemption by the ADA

Although the Passenger Bill of Rights is not preempted by the express preemption provision of the ADA, it could still be preempted if there is indication that Congress intended to implicitly preempt the entire field of regulation. Trinidad, 932 F. Supp. at 526. As discussed above, when dealing with federal preemption of state law, "[t]he purpose of Congress is the ultimate touchstone." Medtronic, Inc., 518 U.S. at 485 (quoting Retail Clerks v. Schermerhorn, 375 U.S. 96, 103 (1963)). However, there is no indication that Congress intended broader preemption than that contained in the express preemption provisions. Trinidad, 932 F. Supp. at 526.

Additionally, it is not appropriate to infer that Congress intended broad preemption.

> When Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a 'reliable indicium of congressional intent with respect to state authority,' Malone v. White Motor Corp., 435 U.S. 497 505 (1978), 'there is no need to infer congressional intent to preempt state laws from the substantive provisions of the legislation.' Cal. Fed. Sav. & Loan Assn. v. Guerra, 479 U.S. 272, 282 (1987).

Cipollone v. Liggett Group, Inc., 505 U.S. 504, 517 (1992).

The Supreme Court of the United States has established that the ADA does not preempt all state law claims that affect airlines but fall outside the express preemption provisions of the ADA. Morales, 504 U.S. at 384 (noting that state actions outside the explicit preemption provision of the ADA are not preempted). See also Branche, 342 F.3d at 1257 (noting that a claim under Florida's Whistleblower Act is not preempted by the ADA); Abdu-Brisson, 128 F.3d at 81 (warning against an ADA preemption analysis that "would sweep too many state regulatory statutes under the rug of

8

ADA preemption."); Hodges, 44 F.3d at 335 (state tort claim for negligent operation of aircraft not preempted by ADA); Cleveland v. Piper Aircraft Corp., 985 F.2d 1438, 1443 (10th Cir. 1993) (holding that a state tort action was not preempted as "Congress did not intend to occupy the field of airplane safety to the exclusion of the state common law"); Rombom v. United Air Lines, Inc., 867 F. Supp. 214, 221 (S.D.N.Y. 1994) (noting that a state tort action will only be preempted if it fits within the express preemption provision of relating to "rates, routes, or services.")

Additionally, Plaintiff has not shown that inferring broad implicit preemption, encompassing the Passenger Bill of Rights, would advance the purpose of the ADA. See Abdu-Brisson, 128 F.3d at 83 (noting that the party seeking preemption "bear[s] the burden of overcoming the initial presumption against preemption by establishing that enforcing the state and city laws would frustrate the purpose of the ADA."). In the absence of such a showing, this Court agrees with the Eleventh Circuit that "to preempt state law claims concerning other elements of airline operations that are not bargained for plainly would not further the goal of promoting competition in the airline industry," and is thus not to be inferred in the absence of an explicit statement of Congress. Branche, 342 F.3d at 1256.

     e. The Dangers of Diverse Regulation

An additional necessary element of a proper preemption analysis is a determination whether "the dangers and hardships of diverse regulation justify foreclosing a state from the exercise of its traditional powers." Abdu-Brisson, 138 F.3d at 84 (internal citations omitted). The danger of diverse regulation on the subject of the Passenger Bill of Rights is limited. The Passenger Bill of Rights is limited and discrete in scope: the provision of lavatories, fresh air, food and water for passengers confined for over three hours in an airplane on the tarmac. There is not a huge diversity

9

of health and safety regulation possible in this narrow area. Additionally, while there is undeniably a cost to the airlines to comply with these requirements, this cost does not stem from the potential diversity of state requirements, but from the requirements themselves. A federal requirement that airlines must provide passengers-in-limbo with lavatories, fresh air, food and water would not pose a significantly lesser hardship to airlines than such requirements coming from the states. Accordingly, the potential danger and hardship to the airlines that could result from state regulation does not outweigh the state's interest in exercising its power to protect the safety and welfare of its citizens.

    f. Conclusion

  Accordingly, the Passenger Bill of Rights is not preempted by the ADA. For the foregoing reasons, this Court has determined that Plaintiff has not established its entitlement to judgment as a matter of law. Instead, the State is entitled to judgment as a matter of law, although it has not moved for such relief.

  Because summary judgment for the state is appropriate as a matter of law, granting such relief at this time serves the goal of judicial efficiency and is clearly within the authority of the Court. Abrams v. Occidental Petroleum Corp., 450 F.2d 157, 165 (2d Cir. 1971); Local 33, Int'l Hod Carriers Bldg. and Common Laborers' Union of America v. Mason Tenders Dist. Council of Greater New York, 291 F.2d 496, 505 (2d Cir. 1961) ("it is most desirable that the court cut through mere outworn procedural niceties and make the same decision as would have been made had defendant made a cross-motion for summary judgment."). Additionally, granting summary judgment for the State does not offend fundamental fairness, as the relevant issues have been exhaustively briefed by both parties. See Coach Leatherware Co. v. AnnTaylor, Inc., 933 F.2d 162,

167 (2d Cir. 1991), *abrogated on other grounds by* Two Peso, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992), *as recognized by* Eastman Kodak Co. v. Photaz Imports Ltd, Inc., 853 F. Supp. 667, 675 (W.D.N.Y. 1993) (noting that "the threat of procedural prejudice [from a *sua sponte* grant of summary judgment] is greatly diminished if the court's *sua sponte* determination is based on issues identical to those raised by the moving party."). For the foregoing reasons, summary judgment will be granted for the State.

### III. Preliminary Injunction Analysis

The above analysis makes Plaintiff's Motion for preliminary injunction moot. Accordingly, it must be denied.

### IV. Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Plaintiff's Motion for summary judgment or, in the alternative, preliminary injunction (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED**, that summary judgment is **GRANTED** for the State; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:   December 20, 2007
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge